IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANDREW PATTERSON,                        §
                                         §
    Plaintiff,                           §
                                         §
v.                                       §    CIVIL ACTION NO. H-08-2127
                                         §
THE PRUDENTIAL INSURANCE                 §
COMPANY OF AMERICA and AON               §
EMPLOYEE BENEFIT COMMITTEE,              §
                                         §
    Defendants.                          §

MEMORANDUM AND ORDER

Pending are defendants The Prudential Insurance Company of America's ("Prudential") and AON Employee Benefit Committee's Motion for Summary Judgment (Document No. 44). After having considered the motion, response,[1] the applicable law, and the administrative record, Defendants' motion will be granted.

---

[1] Plaintiff filed his response to Defendants' Motion for Summary Judgment almost two months late. *See* Local Rules 7.3, 7.4. This response does not alter the Court's conclusion; Defendants' Motion to Strike (Document No. 48) is therefore DENIED as moot. Also, Defendants initially filed an opposed Motion to Seal all summary judgment exhibits (Document No. 45), which include scores of medical records, a number of which include Plaintiff's social security number and birth date, generally protected from disclosure by Fed. R. Civ. P. 5.2. The motion's intent was to "protect Plaintiff's private medical information," but was opposed by Plaintiff. Thus, Plaintiff effectively waived the protection of Fed. R. Civ. P. 5.2(a), and Defendants withdrew the motion in light of Plaintiff's opposition (Document No. 46). The Court accepts the filings not under seal and without redactions. *See* Fed. R. Civ. P. 5.2(h).

I.  Background

Plaintiff Andrew Patterson claims, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), that Prudential wrongly denied his continuing long-term disability ("LTD") benefits under AON's Group Disability Insurance plan (the "Plan") when it determined he was not totally disabled.  Prior to claiming disability, Plaintiff worked for AON as a Senior Insurance Specialist for eight months.[2]  Plaintiff's job was classified as "sedentary,"[3] as it involved recording and documenting client losses, ensuring prompt reporting to carriers, and responding to general client inquiries.[4]  Plaintiff was college-educated, with a bachelor's degree in teaching.[5]  A rather lengthy summary is required of

---

[2]  Defendants assert that Plaintiff worked as a Client Specialist.  Document No. 45 at 5; see also id., ex. A-1 at PRU/PAT 169-70, 414; id., ex. L at PRU/PAT 1027.  According to AON staff emails, it appears that Plaintiff previously worked as a "Sr. Specialist in Client Connection," a subset of AON's service center. Id., ex. C at PRU/PAT 162.  This group was "dismantled" soon after Plaintiff left on disability, but Plaintiff was not officially reassigned due to his absence.  Id.  Thus, AON provided Prudential a job description for a "Client Specialist" in response to Prudential's request for a description of Plaintiff's occupation. Id., ex. C at PRU/PAT 161-170.

[3]  Id., ex. A-1 at PRU/PAT 414, 619.

[4]  Id., ex. A-1 at PRU/PAT 169-70.  The job also required the ability to utilize standard personal computer office software, such as word processing.  Id.  According to Plaintiff, his job further required him to retrieve mail and faxes on another floor, occasionally lift heavy files, retrieve office supplies, and move furniture.  Document No. 45, ex. A-2 at PRU/PAT 1313.

[5]  Id., ex. A-1 at PRU/PAT 187; id., ex. A-2 at PRU/PAT 1044.

2

events arising over four years' time and medical evaluations and opinions rendered by at least eight physicians.

### July 2002: Plaintiff's Injury

Plaintiff fell down a flight of stairs at work on July 22, 2002.[6] He incurred injuries to both of his knees, both wrists, his lower back, one testicle, and his neck; he also complained of depression.[7] He underwent arthroscopic knee surgery on both knees in September and October 2002,[8] and suffered from decreased range of motion and pain due to his back. Plaintiff saw Dr. Angel Perez for pain management; his medications included Celebrex, Trazadone, Vicodin, and Paxil.[9] In September 2003, Plaintiff also received epidural blocks in his back from Dr. David Tomaszek in an attempt to relieve his pain.[10]

---

[6] Id., ex. A-1 at PRU/PAT 044, 082.

[7] Id., ex. A-1 at PRU/PAT 082, 215, 624; id., ex. A-2 at PRU/PAT 1328. Plaintiff apparently had pre-existing osteoarthritis, which was exacerbated by this injury. See id., ex. A-2 at PRU/Pat 1155.

[8] Document No. 45, ex. A-1 at PRU/PAT 293-94; id., ex. A-2 at 1329.

[9] Id., ex. A-2 at PRU/PAT 1231.

[10] Id., ex. A-2 at PRU/PAT 1232.

3

As a result of the injuries and corresponding surgeries, Plaintiff received Short Term Disability benefits through their maximum duration, January 20, 2003.[11]

Relevant Plan Language and Approval of
Claim for LTD Benefits

To receive LTD benefits after the end of his Short Term Disability period, Plaintiff was required to be "totally disabled" under the following definition in the Plan:

> "Total Disability" exists when Prudential determines that all of these conditions are met:
>
> (1) Due to Sickness or accidental Injury, both of these are true:
>
>     (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
>
>     (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.
>
> (2) You are not working at any job for wage or profit.
>
> (3) You are under the regular care of a Doctor.[12]

---

[11] Document No. 45, ex. A-1 at PRU/PAT 147-49.

[12] Id., ex. A-1 at PRU/PAT 010.

In June 2003, Prudential approved Plaintiff's claim for LTD benefits, retroactive to January 21, 2003.[13]  Benefits were offset by Plaintiff's successful workers compensation and Social Security Disability benefits claims.[14]

April 2004: Prudential's First LTD Denial
and Subsequent Reinstatement

Albert Kowalski, M.D., conducted an internal file review to evaluate Plaintiff's functionality in April 2004.  He concluded that Plaintiff's depression, knee problems, lumbar radiculopathy, and cervical spine stenosis and herniated disc were not so debilitating as to prevent him from performing his "usual sedentary occupation."[15]  Prudential terminated Plaintiff's LTD as of May 1, 2004, because Plaintiff "no longer [met] the definition of being Disabled from performing the duties of [his] own occupation."[16] Plaintiff requested reconsideration, informing Prudential that he was in the midst of continuing efforts to get his insurer to approve payment for back surgery recommended by his orthopedic surgeon, Dr. Stephen Esses, to address the pain caused by his

---

[13] Id., ex. A-1 at PRU/PAT 416-17.

[14] Id., ex. A-1 at PRU/PAT 057, 416-17, 429, 688, 716; id., ex. A-2 at PRU/PAT 1164.

[15] Document No. 44 at 6; Document No. 45, ex. A-1 at PRU/PAT 619-21.

[16] Document No. 45, ex. A-1 at PRU/PAT 624-26.

radiculopathy.[17]  Prudential reinstated Plaintiff's LTD on May 18, 2004.[18]

### 2004-2005: Continued LTD Approval Past Initial Duration

Dr. Esses performed back surgery on Plaintiff on February 2, 2005.[19]  In the meantime, the Initial Duration of the Plan ended January 21, 2005.  On that date, the standard for "Total Disability" changed from Plaintiff's incapability to perform the material and substantive duties of his *former occupation* to incapability to perform *any occupation* for which he was reasonably fitted by education, training, or experience.[20]  Prudential approved continued LTD payments on January 20, 2005, pending Plaintiff's February 2005 back surgery.[21]  Post-surgery, Plaintiff reported to Dr. Son Nguyen of the Texas Pain Institute that his neck felt better, but still rated his pain at three to four on a one through ten scale (ten being the highest); in March 2005, Plaintiff reported a level of pain of 5/10, and numbness in his right hand.[22]

---

[17] Id., ex. H at PRU/PAT 635; *see also* id., ex. A-2 at PRU/PAT 1333.

[18] Id., ex. A-1 at PRU/PAT 661, 665, 676-77.

[19] Id.

[20] Document No. 44 at 6; Document No. 45, ex. A-1 at PRU/PAT 005, 010.

[21] Id., ex. A-2 at PRU/PAT 816-17, 832-33.

[22] Id., ex. A-2 at PRU/PAT 1334.

However, Dr. Esses noted in Plaintiff's February follow-up that Plaintiff had done "extremely well," and showed full motor strength in his upper extremities.[23]   In his March 31, 2005 visit to Dr. Esses, Plaintiff indicated he had joined a health club and was going to start an exercise program.[24]   Plaintiff still experienced some muscular pain, but, according to Dr. Esses, it was much improved since before the surgery.[25]   Plaintiff's range of motion was "limited but improving."[26]

In April and May 2005, Plaintiff reported a pain level of 5/10 to Dr. Nguyen, but in May said his neck was feeling better.[27] Dr. Nguyen indicated the possibility of lumbosacral artificial disc replacement surgery.[28]   Prudential further extended Plaintiff's LTD through August 2005, and again through December 31, 2005.[29]

A September 2005 electrodiagnostic study under Dr. S. Kahkeshani of Pars Neurological, P.A., revealed two "old"

---

[23] Id., ex. J at PRU/PAT 844.

[24] Id., ex. J at PRU/PAT 868.

[25] Id., ex. A-2 at PRU/PAT 1335; id., ex. J at PRU/PAT 868.

[26] Id., ex. J at PRU/PAT 868.

[27] Id., ex. J at PRU/PAT 871, 875.

[28] Id.   Nothing in the administrative record indicates this additional surgery ever took place.

[29] Id., ex. A-2 at PRU/PAT 840, 978-80.

7

radiculopathies.[30]   In a visit to Dr. Esses in October, Plaintiff complained about his neck and lower back; his range of motion was reduced, but he exhibited normal strength in his lower extremities.[31]

<u>November 2005 - May 2006: Prudential's Investigation<br>and Second Denial of LTD</u>

Prudential retained Research Consultants Group to observe Plaintiff in November and December 2005.   One instance of video surveillance revealed Plaintiff was mobile and, when walking from a restaurant to his truck, exhibited a "smooth and fluid" walking movement, as well as little difficulty entering and exiting his truck.[32]   He spent most of his time at home, engaging in weekend activities such as shopping at local stores and eating at local restaurants with his son.[33]   The investigators also interviewed Plaintiff's neighbors, who noted that, when observed outside the home, he does not use any medical aid devices.[34]

---

[30] <u>Id.</u>, ex. A-2 at PRU/PAT 1335; <u>id.</u>, ex. K at PRU/PAT 961.

[31] <u>Id.</u>, ex. K at PRU/PAT 981.

[32] <u>Id.</u>, ex. A-2 at PRU/PAT 1037.   *See also* <u>id.</u>, ex. A-2 at PRU/PAT 1009-13, 1034-37, 1335.

[33] <u>Id.</u>

[34] <u>Id.</u>, ex. A-2 at PRU/PAT 1011.

On November 15, 2005, Plaintiff also submitted a self-report of his daily living activities to Prudential.[35]   He reported difficulty sleeping due to pain waking him up, but also indicated he drives 6-20 miles, six times per week, without assistance.[36]   He indicated that he spends 1-2 hours monthly doing household activities, including laundry, vacuuming, washing dishes, and taking out the trash.[37]   He reported shopping for thirty minutes to an hour each week, but would ask for help if he was "having a bad day."[38]   He also indicated that he fished, bowled, played tennis, and watched movies, though he only tried tennis three to four times in the previous year.[39]

Plaintiff further reported to Prudential, by way of a December 2005 phone conversation, that he could not return to his former job because the position no longer existed, and because he would be unable to deal with the stress of the job due to his medications causing him to lose focus.[40]   He noted his bachelor's degree in teaching, and indicated his plan to take computer and other courses to prepare himself for a career in teaching social studies and/or

---

[35] Id., ex. L at PRU/PAT 993-1001.

[36] Id., ex. L at PRU/PAT 995,996.

[37] Id., ex. L at PRU/PAT 997.

[38] Id.

[39] Id., ex. L at PRU/PAT 998.

[40] Id., ex. A-2 at PRU/PAT 1044.

physical education, which he asserted would be less physically and mentally demanding than his former occupation.[41]

Prudential obtained from the Texas Workers Compensation Commission the report of Dr. James Hood, an orthopedic surgeon, who undertook an independent medical evaluation of Plaintiff for his Texas Workers Compensation claim in December 2005.[42]  Based on his review of the medical records and his personal examination of Plaintiff, he concluded that Plaintiff could work at least in a sedentary setting; he could stand for four hours straight, walk for two hours, and sit for eight hours with 15-minute stretch breaks every two hours, but he could not climb any stairs, repetitively reach overhead, or drive heavy equipment.[43]

In May 2006, Dr. Joyce Bachman of Prudential performed an internal review of Plaintiff's medical history since Dr. Kowalski's April 2004 review.  She concluded that Plaintiff was capable of sedentary activity.[44]  She indicated that due to his "documented ongoing radiculopathy" and lower back pain, Plaintiff should avoid prolonged standing, walking, or sitting; should not lift greater

---

[41] Id.

[42] Id., ex. L at PRU/PAT 1020-1023.

[43] Id.

[44] Id., ex. A-2 at PRU/PAT 1155-57.

10

than 20 pounds more than occasionally; and that he should avoid prolonged neck flexion and repetitive overhead work.[45]

Prudential issued its decision to terminate Plaintiff's LTD in a May 24, 2006 letter to Plaintiff.[46]   The letter summarized Plaintiff's medical history since the 2002 accident, as well as Plaintiff's self-reported activities, and concluded that Plaintiff was "capable of performing activities within a sedentary level of physical demand."[47]

In support of its conclusion, Prudential cited several aspects of the record, including:

> (1) Dr. Esses's post-operation report that Plaintiff was doing extremely well, and exhibited full motor strength in his upper extremities[48];
>
> (2) Plaintiff's ability to perform his "normal daily activities and hobbies" which was "indicative of [his] capability to perform sedentary work"[49];
>
> (3) That the information on file indicated Plaintiff could "drive without observable difficulty which requires significant range of motion (ROM) of the neck"[50]; and

---

[45] Id., ex. A-2 at PRU/PAT 1157.

[46] Id., ex. A-2 at PRU/PAT 1163-66.

[47] Id.

[48] Id., ex. A-2 at PRU/PAT 1164.

[49] Id.

[50] Id.

(4) That Plaintiff's knee "conditions appear to have resolved through surgical interventions," that surveillance indicated Plaintiff walked without assistive devices and without a limp, and that there was otherwise "no functional impairment evidenced."[51]

Prudential also noted Plaintiff's ongoing back pain and the fact that, despite an earlier recommendation for surgery,[52] none had been undertaken.[53] Nonetheless, it asserted that Plaintiff was at least able to perform activities within a sedentary level, as evidenced by his self-reported activities of driving, bowling, fishing and vacuuming the house, as well as his plans to return to work as a teacher at the start of the 2006 school year.[54] According to Prudential, it would be reasonable for Plaintiff "to self-accommodate between standing, walking and sitting activities when necessary or when [he] experience[s] discomfort throughout a normal work day."[55] Prudential authorized benefit payments through June 30, 2006, "to allow [Plaintiff] additional time [to] transition back to work."[56]

---

[51] Id.

[52] This likely refers to Dr. Nguyen's May 2005 recommendation. See id., ex. A-2 at PRU/PAT 1335.

[53] Id., ex. A-2 at PRU/PAT 1165.

[54] Id. Prudential also noted Plaintiff's self-reported "Bachelors Degree in Teaching." Id., ex. A-2 at PRU/PAT 1164.

[55] Id., ex. A-2 at PRU/PAT 1165.

[56] Id.

### May 2006: Plaintiff's First Appeal

Plaintiff appealed Prudential's decision in two letters dated May 25 and June 2, 2006.  In the first, Plaintiff stated:

> I will be unable to return to my prior occupation, working in the insurance industry.  The working conditions in the insurance industry (stress related/ mental agility), will cause me to suffer physically with back spasms, back pain and depression.  Due to my injuries I sustained on 7/22/2002, I require that I take anti depressants from now due to chronic pain and pain medication, hydrocodone, when I have pain.
>
> . . . .
>
> The profession of teaching student [sic] with special needs would not place me in harms [sic] way and I would be gainfully employed.[57]

Plaintiff added on June 6 that he had not bowled in 10 years, and asserted that he will need further surgery due to pain--but also noted that the "surgery is not currently required as the pain has not gotten to the point where surgery is necessary."[58]  Drs. Esses and Perez continued to recommend he stay out of work.[59]

Dr. Jack Denver independently reviewed Plaintiff's entire record, including both of Plaintiff's appeal letters.[60]   He

---

[57] Id., ex. A-2 at PRU/PAT 1168.

[58] Id.

[59] Id., ex. M at PRU/PAT 1183, 1185.

[60] Id., ex. A-2 at PRU/PAT 1228-37.  Dr. Denver is Board Certified in Physical Medicine and Rehabilitation, with sub-

concluded that Plaintiff had no restrictions on his ability to sit and for "fine and gross motor movements of the hands," but that Plaintiff should not stand or walk for more than 60 minutes consecutively (or four hours total) in an 8-hour workday.[61] He also concluded that Plaintiff should not balance, climb, reach overhead, kneel, or push or pull over 20 pounds, and that Plaintiff should bend or stoop only on occasion.[62]

In September 2006, Plaintiff informed Prudential that Dr. Esses advised him a bone spur had developed on the surgical site on Plaintiff's back, which Plaintiff claimed caused neurological impairment.[63] Prudential requested updated medical records from Dr. Esses, as well as a recent MRI of Plaintiff.[64] At Prudential's request, Dr. Denver in November reviewed these documents and reports, and they did not alter his previous conclusion.[65] The MRI showed nothing new to alter the restrictions previously provided, and, despite "patient complaints of subjective weakness involving his right arm," Dr. Esses's examinations

---

specialties in pain medicine and spinal cord medicine. Id., ex. A-2 at PRU/PAT 1237.

[61] Id., ex. A-2 at PRU/PAT 1234-35.

[62] Id., ex. A-2 at PRU/PAT 1235.

[63] Id., ex. M at PRU/PAT 1239-40.

[64] Id., ex. M at PRU/PAT 1242-43, 1251, 1259-63, 1272-73.

[65] Id., ex. M at PRU/PAT 1277, 1281-85.

revealed "normal" strength in Plaintiff's right arm and associated muscles.[66]

Prudential notified Plaintiff on December 1, 2006, that his first request for reconsideration of the LTD denial was denied.[67] In its letter, it listed the relevant Plan definitions, then gave its reasoning for denying the request:

> You portray yourself as being more limited that [sic] what is demonstrated by physician evaluation findings and medical and surgical history. Your complaints and degree of self-reported chronic pain do not correlate with your past operative, diagnostic testing and clinical findings. Your residual functional status suggests that you can perform physically at a higher level than you self-report. We maintain that you possess the capacity to perform work at a sedentary physical demand level . . . .[68]

Prudential concluded that Plaintiff would be capable of performing his former occupation of Client Specialist, based upon the restrictions denoted by Dr. Denver.[69]

---

[66] Id., ex. M at PRU/PAT 1284.

[67] Id., ex. A-2 at PRU/PAT 1290-95.

[68] Id., ex. A-2 at PRU/PAT 1294.

[69] Id. Even though the Plan's standard for "Totally Disabled" only referenced *any* occupation at this point, Prudential indicated Plaintiff was capable of performing even his former occupation. *See* Id., ex. A-1 at PRU/PAT 010; id., ex. A-2 at PRU/PAT 1294.

## February 2007: Plaintiff's Second Appeal

Plaintiff initiated his second appeal of the decision on February 1, 2007.[70]   Plaintiff asserted that Prudential had incorrectly characterized his prior job requirements--specifically, he was "also responsible for obtaining supplies (office), mov[ing] furniture, to search for policies (which can [be] very large and heavy)," and to retrieve faxes and mail on a different floor "several times a day."[71]   He also submitted two letters from Drs. Perez and Esses. Dr. Perez asserted that Plaintiff "is being treated for Severe Cervical Spine Disease, Chronic Back Pain, Hypertension, Insomnia, Benign Prostrate Hypertrophy, Depression, and Fatigue."[72]   As a result, Plaintiff took medications to treat his pain, which Dr. Perez contends are well-documented to:

> [H]ave side effects including severe drowsiness, inability to concentrate, apathy, lessen physical activity and unable to operate machinery (computers) as well as other effects.  There was no need to list the side effects in medical records or reports.[73]

Dr. Perez said Plaintiff would require pain medication to sit for long periods of time, which would then "alter his ability to think

---

[70] <u>Id.</u>, ex. A-2 at PRU/PAT 1313.

[71] <u>Id.</u>

[72] <u>Id.</u>, ex. A-2 at PRU/PAT 1316.

[73] <u>Id.</u>

logically and act quickly," and that, despite Plaintiff's attempts to teach part-time, his "injuries and medications are having a negative affect [sic] on him and his ability to teach."[74]

Dr. Esses's opinion was that Plaintiff "was unable to return to work from the time of his surgery through December 2006 and that he could return to work in December 2006, but part-time only."[75]

Prudential again sought independent medical review. Dr. Thomas Lazoff, a doctor certified by the American Board of Physical Medicine and Rehabilitation and the Board of Pain Medicine, reviewed the entire administrative record, and concluded that the medical documentation supported a finding of "mild functional impairment from 7/01/06 forward as it pertains to [Plaintiff's] lumbar spine, cervical spine, and bilateral knee conditions."[76]  He listed the same restrictions as Dr. Denver had noted in reviewing Plaintiff's medical records for his first appeal, and also opined that Dr. Perez's allegation of adverse side effects caused by Plaintiff's pain medications was not supported by the record, as it was "not conveyed in the numerous office notes over the last few years."[77]  Finally, he believed Plaintiff's "self-

---

[74] Id.

[75] Id., ex. A-2 at PRU/PAT 1320.

[76] Id., ex. A-2 at PRU/PAT 1337.

[77] Id., ex. A-2 at PRU/PAT 1338.

17

reported pain complaints are out of proportion to his physical exam findings."[78]

Prudential sent a letter to Plaintiff on March 12, 2007, again upholding its LTD denial, indicating that Plaintiff's impairment was not as severe as he self-reported and that Plaintiff's medical record did not support a conclusion that he was unable to perform the material and substantial duties of his former occupation, let alone any occupation.[79]

## II.   Summary Judgment Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).   The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in

---

[78] Id.

[79] Id., ex. A-2 at PRU/PAT 1342-45.

18

a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

### III.  Discussion

Plaintiff challenges (1) Prudential's interpretation of its Plan and (2) factual findings regarding the scope of Plaintiff's

occupational duties and his functional limitations.[80]   The Court will first address Prudential's interpretation of its Plan, then review Prudential's fact-finding.

## A.   Prudential's interpretation of its Plan

ERISA confers jurisdiction on federal courts to review benefit determinations by fiduciaries or plan administrators.   *See* 29 U.S.C. § 1132(a)(1)(B).   "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."   Estate of Bratton v. Nat'l Union Fire Ins. Co., 215 F.3d 516, 521 (5th Cir. 2000) (citing Firestone Tire & Rubber Co. v. Bruch, 109 S. Ct. 948, 956-57 (1989)).   When a plan administrator or fiduciary is given discretionary authority, a denial of benefits is reviewed for an abuse of discretion.   Ellis v. Liberty Life Assur. Co., 394 F.3d 262, 269 (5th Cir. 2004);

---

[80] Document No. 10 at 6; Document No. 47 at 3, 12.   Plaintiff also alleges that Prudential failed to explain how it arrived at its decision, where the definition of "the term under the Long Term Disability Policy" could be found, and what Plaintiff needed to submit for Prudential to assess his condition.   These contentions lack merit, as indicated by even a cursory examination of Prudential's multiple detailed letters to Plaintiff, each of which quotes the definition of "Total Disability" and recites its findings and conclusions.   *See, e.g.*, Document No. 45, ex. A-2 at PRU/PAT 1163-66, 1290-95, 1342-45.   Moreover, Prudential's first denial letter enumerated examples of documentation Plaintiff should submit to support his claims.   *See* id., ex. A-2 at PRU/PAT 1165-66.

Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 395 (5th Cir.
2006).[81]

Whether a plan grants discretionary authority does not depend
upon any "magic word" or "linguistic template." Chevron Chem. Co.
v. Oil, Chem. & Atomic Workers Local Union 4-447, 47 F.3d 139, 142
(5th Cir. 1995); Wildbur v. ARCO Chem. Co., 974 F.2d 631, 637 (5th
Cir.), *modified on other grounds*, 979 F.2d 1013 (5th Cir. 1992).
Nonetheless, the plain language of the plan still must expressly
confer discretionary authority to the administrator or fiduciary.
Chevron Chem. Co., 47 F.3d at 142. The Court looks to the plan as
a whole to determine the appropriate standard to apply. Wildbur,
974 F.2d at 637.

---

[81] While Plaintiff alleges in his First Amended Complaint that
Prudential is the insurer and AON the administrator, Document No.
10 at 2, Defendants assert that "Prudential is a fiduciary under
the Plan because it insures and administers the Plan and is
responsible for evaluating and reviewing LTD claims made by
participants such as Plaintiff." Document No. 44 at 14. The Plan
language provided by Prudential does not explicitly name it *or* AON
as the administrator; however, an email exchange in the
administrative record indicates that Veronica Perez of AON
represented to Plaintiff that AON is the Plan administrator.
Document No. 45, ex. Q at PRU/PAT 1576. The Court need not resolve
this factual discrepancy; whether Prudential is an administrator or
a fiduciary does not alter the standard of review or the Court's
analysis, so long as the Plan expressly grants Prudential
discretionary authority for the relevant determinations under the
Plan, as discussed below. *See, e.g.*, Metropolitan Life Ins. Co. v.
Glenn, 128 S. Ct. 2343, 2348 (2008) (discussing the applicability
of trust law principles to the "administrator or fiduciary" when
the benefits plan grants that party "discretionary authority"
(citing Firestone, 109 S. Ct. 948)).

Here, Prudential's determinations will be reviewed for an abuse of discretion. The Plan states that "Prudential determines" when both "Total Disability" and "Partial Disability" exist, and, "at its own expense, has the right to examine the person whose loss is the basis of the claim" as often as is "reasonable" while the claim is pending.[82] Prudential also determines, for example, "the type of expenses that will be covered" for claimant rehabilitation, and when such expenses "may be incurred."[83] Thus, the Plan expressly grants Prudential discretionary authority over its determination whether to terminate Plaintiff's LTD benefits. *See*, *e.g.*, Wildbur, 974 F.2d at 637 (plan grants discretionary authority where it "expresses, i.e., puts into words, the authority of the administrator to determine eligibility").

In the Fifth Circuit, review for an ERISA plan fiduciary's abuse of discretion follows a two-step process. Stone v. UNOCAL Termination Allowance Plan, 570 F.3d 252, 257 (5th Cir. 2009). First, the Court determines whether the plan administrator's determination was legally correct. Id. Whether an interpretation of a plan is legally correct requires consideration of (1) whether a uniform construction of the plan has been given by the administrator, (2) whether the interpretation is fair and

---

[82] Document No. 45, ex. A-1 at PRU/PAT 010, 013, 021.

[83] Id., ex. A-1 at PRU/PAT 012.

22

reasonable, and (3) whether unanticipated costs will result from a different interpretation of the plan.  Id. at 258.  If the determination was legally correct, there is no abuse of discretion. Id. at 257.  Otherwise, the Court proceeds to step two to determine whether the administrator's interpretation was nonetheless not an abuse of discretion.  Id.  However, the Court is not confined to this test; it may skip the first step if it can more readily determine that the administrator's decision was not an abuse of discretion.  Holland v. Int'l Paper Co. Retirement Plan, 576 F.3d 240, 246 n.2 (5th Cir. 2009).  Here, the Court need not reach step two because Prudential's determination, in the context of the facts of record, is a legally correct interpretation of the Plan's terms.

There is no evidence of record regarding either the first or third commonly reviewed factors, and therefore those are not discussed. See, e.g., Collinsworth v. Hartford Life and Acc. Ins. Co., No. 3:03-CV-0457, 2005 WL 1189841, at *10 (N.D. Tex. May 19, 2005); Atteberry v. Memorial-Hermann Healthcare Sys. ex rel. Atteberry, 405 F.3d 344, 349 (5th Cir. 2005).  The determinative factor, therefore, is whether Prudential's reading of the Plan was fair, which is at any rate the "most important" factor of the three.  Stone, 570 F.3d at 260.

Plaintiff asserts that the description of Plaintiff's occupation relied upon by Prudential in determining whether he

could  perform  his  former  occupation  was  too  generalized.[84]
Specifically,  in  his  second  appeal,  Plaintiff  argued  that  the  job
description  Prudential  used  "covers  a  general  job  for  a  large
number  of  employees,"  but  omitted  other  functions  Plaintiff
performed,  such  as  moving  furniture,  retrieving  office  supplies,
retrieving  mail  and  faxes  daily  from  another  floor,  and  sometimes
lifting  heavy  files.[85]

    The  Plan's  definition  of  "Total  Disability"  requires  that
Plaintiff  be  unable  to  "perform  .  .  .  the  material  and  substantial
duties"  of  his  "occupation."[86]  The  terms  "material  and  substantial
duties"  and  "occupation"  are  not  defined  in  the  Plan;  hence  the
terms  are  given  their  ordinary  and  generally  accepted  meaning.
House v. Am. United Life Ins. Co., 499 F.3d 443, 453 (5th Cir.

---

[84] Document  No.  47  at  10,  12.   Prudential  determined  that
Plaintiff  could  perform  the  material  and  substantial  duties  of  his
former  occupation  despite  his  limitations,  Document  No.  45,  ex.  A-2
at  PRU/PAT  1165.   See also id., ex.  A-2  at  PRU/PAT  1294
(Prudential's  denial  of  Plaintiff's  first  appeal);  id., ex.  A-2  at
PRU/PAT  1345  (denial  of  second  appeal).   Prudential  could  have
found  Plaintiff  capable  simply  of  performing  any  occupation  for
which  he  was  "reasonably  fitted  by  [his]  education,  training,  or
experience."   See  Document  No.  45,  ex.  A-2  at  PRU/PAT  010.
However,  Prudential  reasoned  that  Plaintiff  was  able  to  perform
even  his  former  occupation.   Even  by  this  standard,  Prudential's
interpretation  of  its  Plan  as  applied  to  Plaintiff  was  correct.

[85] Document  No.  45,  ex.  A-2  at  PRU/PAT  1313.   According  to
Plaintiff's  representations  to  his  physical  therapist  in  November
2002,  these  files  could  weigh  up  to  20  to  50  lbs.   Id., ex.  B  at
PRU/PAT  131.   However,  in  the  same  office  visit,  he  also  indicated
that  he  used  the  stairs  "instead  of  using  the  elevator."   Id., ex.
B  at  PRU/PAT  129.

[86] Id., ex.  A-1  at  PRU/PAT  010.

2007).  Particularly, the term "occupation" has been found to be a "general description, not a specific one."  Ehrensaft v. Dimension Works Inc. Long Term Disability Plan, 120 F. Supp. 2d 1253, 1259 (D. Nev. 2000) (quoted in Schmidlkofer v. Directory Distrib. Assocs., Inc., 107 Fed. App'x 631, 634-35 (6th Cir. 2004)); see also House, 499 F.3d at 454 n.8 (quoting Ehrensaft in interpreting "regular occupation").  As the District of Nevada noted:

> A person may not be able to perform a specific job assignment, but still be able to perform the duties generally understood to be part of his or her "occupation."  For example, a secretary is not disabled from his or her "occupation" just because he or she cannot also perform additional tasks assigned by an employer, such as moving furniture or lifting heavy objects.

Ehrensaft, 120 F. Supp. 2d at 1259.

Prudential used the "Client Specialist - Client Connection" position description provided by AON in determining the "material and substantial duties" of Plaintiff's "occupation" under the Plan. The document contains descriptions for three sub-sets of the position: Associate, Specialist, and Senior Specialist.  The descriptions focus upon the general requirements for each position, such as: the employee's degree of understanding of claims operations; an ability to field client requests over the telephone; an ability to utilize "PC office products such as Word, Excel, and

Lotus Notes"; and an ability to type 35-40 words per minute.[87] Given Prudential's factual determination that the description provided by AON accurately represented the general duties of Plaintiff's former occupation, its conclusion that those general duties--and not specific functions performed by Plaintiff in his particular job--comprise the "material and substantial duties" of Plaintiff's "occupation" was fair and reasonable, and in accordance with the legally correct interpretation of the Plan's terms.[88]

---

[87] Id., ex. A-2 at PRU/PAT 1314-15.

[88] See, e.g., London-Marable v. The Boeing Co., No. CV-04-2611, 2008 WL 853615, at *6 (D. Ariz. March 27, 2008) (finding "arguably a stronger basis" for upholding definition of "own occupation" than in Ehrensaft where Plaintiff's own "written job description . . . [does] not require Plaintiff to perform lifting, pushing, pulling, twisting, turning, bending, squatting or reaching to move heavy objects"); see also, e.g., Doe v. Provident Life & Acc. Ins. Co., 601 F. Supp. 2d 290, 295-96 (D.D.C. 2009) ("[N]umerous courts that have interpreted similar disability insurance policies have held that the term 'occupation' means a general occupation, such as a physician, rather than a particular job or position such as an ER physician.").

In fact, some courts have held that reference to even more generic job descriptions, as opposed to a specific employer's job description, is appropriate in determining the "material" duties of one's "occupation." See, e.g., Osborne v. Hartford Life & Acc. Ins. Co., 465 F.3d 296, 298-300 (6th Cir. 2006), cert. denied, 128 S. Ct. 46 (2007) (insurer did not abuse its discretion by referencing the Dictionary for description of plaintiff's occupation; "'occupation' is sufficiently general and flexible to justify determining a particular employee's 'occupation' in light of the position descriptions in the Dictionary rather than examining in detail the specific duties the employee performed"); Pylant v. Hartford Life & Acc. Ins. Co., 429 F. Supp. 2d 816, 823-24 (N.D. Tex. 2006) (the term "Your Occupation" was correctly interpreted by reference to Department of Labor definitions for insured's position as a technical writer).

B.    Prudential's Determination of the Facts

    Plaintiff    nevertheless    contends    in    his    response    to
Defendants' Motion for Summary Judgment that Prudential abused its
discretion in its finding of what Plaintiff's occupational duties
were, and in its finding of Plaintiff's physical capabilities and
limitations.    Specifically, Plaintiff asserts that the "Client
Specialist - Client Connection" position description provided by
AON, in addition to being too generalized, was also incorrect.[89]
He also asserts that Prudential did not accord proper weight to the
evidence in determining his capabilities.[90]

    "[A] factual determination, such as whether a beneficiary is
totally disabled under the terms of a plan, always warrants an
'abuse of discretion' review."  Gellerman v. Jefferson Pilot Fin.
Ins. Co., 376 F. Supp. 2d 724, 731 (S.D. Tex. 2005); see also
Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211,
213 (5th Cir. 1999).

    To determine whether an administrator or fiduciary abused its
discretion in denying benefits, the Court inquires whether the
administrator acted arbitrarily or capriciously.  Meditrust, 168
F.3d at 214.  An administrator's decision should be affirmed if

―――――――――――――――――

[89] Document No. 47 at 12.

[90] Id. at 9-11.

27

supported by substantial evidence, and is arbitrary "only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" Id. at 215 (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 828-29 (5th Cir. 1996)). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Cooper v. Hewlett-Packard Co., Disability Plan, --- F.3d ----, 2009 WL 4842458, at *5 (5th Cir. Dec. 16, 2009) (quoting Ellis, 394 F.3d at 273); see also Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir. 1999) (en banc), abrogated in part by Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), as recognized in Holland, 576 F.3d at 247-48 n.3 (administrator's decision to deny benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial"). The district court, in reviewing the administrator or fiduciary's factual determinations, should consider only the evidence that was before the administrator or fiduciary. See Meditrust, 168 F.3d at 215.[91]

---

[91] Plaintiff has made an unsupported assertion that Defendants have not divulged the entire administrative record. Defendants' counsel, on the other hand, submitted a sworn statement that the exhibits submitted with Defendants' Motion for Summary Judgment comprise the entire administrative record. The Court further held a hearing by telephone with both parties, in which it explored this issue. After having heard the arguments, the Court finds that Defendants submitted the full administrative record on which

Here, Prudential operates under a conflict of interest; it has both discretionary authority to determine "Total Disability" *and* is responsible for paying benefits under the Plan.[92]   *See* Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008). Though evidence of a conflict is not determinative, nor does it merit converting the "abuse of discretion" review into a more onerous standard of review, it does factor into the Court's

---

Prudential based its decision.  The Court is unable to identify, and Plaintiff, as per his admission, is unable to identify, any specific component of the administrative record not submitted by Prudential.  Moreover, Defendants submitted Prudential's entire administrative record to Plaintiff in September 2008, and additionally submitted any documents in AON's possession relevant to Plaintiff's LTD claim, whether or not Prudential ever relied upon such documents in its determination.  Document No. 49, ex. 2 at 1-2.

Plaintiff also submitted an October 2008 functionality assessment in support of his arguments.  *See* Document No. 47, ex. B at 1.  However, because this information did not and could not have existed in the administrative record prior to his May 23, 2008, filing of this suit, and therefore was not before Prudential, it cannot be considered in this review.  Vega, 188 F.3d at 300; *see also* Keele v. JP Morgan Chase Long Term Disability Plan, 221 Fed. App'x 316, 320 (5th Cir. 2007) (unpublished opinion).  The Court also notes the presence in the administrative record of three letters from Plaintiff's treating physicians, Drs. Esses and Perez, dated in November and December 2007.  Document No. 45, ex. P at PRU/PAT 1402, 1405, 1409.  None of the letters presents new information that justifies a conclusion different than what the Court reaches based upon the information considered by Prudential. *See* Keele, 221 Fed. App'x at 320-21; *see also* Keller v. AT & T Disability Income Plan, --- F. Supp. 2d ----, 2009 WL 3247980, at *10-*11 (W.D. Tex. Oct. 1, 2009).

[92] Prudential's Group Insurance Contract with Defendant AON Corporation indicates that "Prudential will provide or pay the benefits" in the Plan.  Document No. 45, ex. A-1, ex. B at PRU/PAT 026.

analysis of Prudential's denial of benefits. *See* <u>Glenn</u>, 128 S. Ct. at 2350-52 (2008); <u>Holland</u>, 576 F.3d at 247-48 n.3.[93]

### 1.   Plaintiff's occupational duties

Plaintiff asserts he was not a "Client Specialist" before his accident. Instead, he alternately asserts in his response to Defendants' Motion for Summary Judgment that he was a "Senior Insurance Specialist"[94] or a "Senior Insurance Specialist in charge of the call center."[95]   Indeed, according to AON staff emails regarding Plaintiff's appropriate job description, Plaintiff's position was eliminated soon after he took disability leave.[96]   AON

---

[93] The Fifth Circuit, among others, formerly used a "sliding scale" test to arrive at a more strict standard of review in cases of conflicted administrators. *See* <u>Vega</u>, 188 F.3d at 296-97 (adopting the sliding scale approach); *see also* <u>Holland</u>, 576 F.3d at 247-48 n.3 (noting other circuits' sliding scale approaches). The Supreme Court's <u>Glenn</u> decision clarified that an administrator's potential conflict of interest is to be considered only a factor among others, not a means to lead to a more stringent standard of review. *See* <u>Glenn</u>, 128 S. Ct. at 2350; <u>Holland</u>, 576 F.3d at 247-48 n.3.

However, there is a lack of evidence from which the Court can determine the extent, if any, of this potential conflict of interest. Though it is still a factor, it is not a "tiebreaking" factor. *See* <u>Dutka ex rel. Estate of T.M. v. AIG Life Ins. Co.</u>, 573 F.3d 210, 213 n.6 (5th Cir. 2009) (citing <u>Glenn</u>, 128 S. Ct. at 2351); *see also*, *e.g.*, <u>Merrell v. Hartford</u>, No. C-08-348, 2009 WL 3063323, at *2 (S.D. Tex. Sept. 22, 2009).

[94] Document No. 47 at 10.

[95] <u>Id.</u> at 3.

[96] Document No. 45, ex. C at PRU/PAT 162.

nonetheless submitted the "Client Specialist" position description to Prudential in its Group Disability Insurance Employer Statement as an apparent closest match to Plaintiff's former position, and indicated it was Plaintiff's occupation.[97] There is no summary judgment evidence to support Plaintiff's assertion that AON intentionally submitted an incorrect job description to Prudential. The descriptions for the three levels of the Client Specialist position--Associate, Specialist, and Senior Specialist--all appear to qualify as "sedentary," which is in line with Prudential's repeated classification of Plaintiff's physical occupational demands, which Plaintiff has never contested.[98] Moreover, Plaintiff himself appears to have admitted the accuracy of the description in at least a general sense: he argued on his second appeal that, "[w]hile it covers a general job for a large number of employees, *I also was responsible for*" the occasional lifting, stair-climbing, and other functions discussed previously.[99]

The evidence of record does not support a finding that Prudential acted arbitrarily or capriciously in using, and continuing to use, the "Client Specialist" position description

---

[97] *Id.*, ex. C at PRU/PAT 160-67.   The "Client Specialist" position is in the Client Connection subset of the Client Service business unit--the same subset of the same unit as Plaintiff's Senior Specialist Position.   *Id.*, ex. C at PRU/PAT 162, 169.

[98] *See, e.g.*, Document No. 45, ex. A-1 at PRU/PAT 625, *id.*, ex. A-2 at PRU/PAT 1165, 1294.

[99] *Id.*, ex. A-2 at PRU/PAT 1313 (emphasis added).

sent by AON as a representation of the duties of Plaintiff's former occupation.[100]   *See* Vega, 188 F.3d at 298-99 (refusing to impose duty even reasonably to investigate facts surrounding claims on plan administrators); *cf. also* Wright v. R.R. Dunnelley & Sons Co. Group Benefits Plan, 402 F.3d 67, 77-78 (1st Cir. 2005) (noting that "integral part" of plaintiff's "burden to provide evidence that he was unable to perform the duties of his occupation" is a "statement of what his job required").

_____

[100] Plaintiff has proffered what he calls a "[c]urrent job listing," which, with no further elaboration, he indicates is the same job he "performed at the time the accident happen[ed]." Id. at 12. The document is apparently a print-out of a job description from AON's website. Id., ex. J at 5-6. However, the job listed is "Call Center Operations Manager," the location of which is Winston Salem, North Carolina. Id. The job lists several managerial duties, such as providing feedback to employees, project management, managing delivery of service to clients, establishing functional goals and monitoring progress. Id., ex. J at 5. The administrative record contains no evidence to substantiate that this print-out describes Plaintiff's former occupation, which Plaintiff himself claims is "Senior Insurance Specialist." See id. at 3. "[T]he district court is precluded from receiving evidence [beyond the administrative record] to resolve disputed material facts--i.e., a fact the administrator relied on to resolve the merits of the claim itself." Vega, 188 F.3d at 299.

Moreover, "[S]uch conclusory, unsupported assertions are insufficient to defeat a motion for summary judgment." Marshall v. E. Carroll Parish Hops Serv. Dist., 134 F.3d 319, 324 (5th Cir. 1998). To the contrary, the administrative record reflects that at the time of his injury, Plaintiff's office was located in Houston, Texas. Document No. 45, ex. B at PRU/PAT 048. Plaintiff represented to Prudential and a physical therapist during early stages of his treatment in 2002 and 2003 that he was a "Senior Specialist," which, according to him, "require[d] helping clients with different materials that can be up to 20 to 50-lbs." Id., ex. B at PRU/PAT 131, 191.

2.   Plaintiff's functional limitations

Prudential determined in its first denial of Plaintiff's LTD benefits that Plaintiff was subject to the following restrictions: "no prolonged standing, walking, or sitting; avoidance of lifting above 20 pounds occasionally; no prolonged neck flexion or extension; and no repetitive overhead work."[101]

On the whole, substantial evidence supports this finding. Prudential appears to accept, based on the objective medical data and diagnoses, that Plaintiff suffers from radiculopathy and degenerative disc disease; its decision to deny LTD benefits instead rests upon its assessment of what those data and diagnoses mean in terms of Plaintiff's physical limitations.   Prudential first determined that Plaintiff could perform within these restrictions based on Dr. Bachman's review of Plaintiff's medical records, self-reported activities, and video surveillance. Dr. Bachman appeared to accord significant weight to limited video surveillance evidence and an apparent over-simplification of Plaintiff's self-reported activities.[102]   Surveillance reports here

---

[101] Document No. 45, ex. A-2 at PRU/PAT 1165.

[102] Courts sometimes find surveillance videos to be relevant. See, e.g., Pylant v. Hartford Life & Acc. Ins. Co., 429 F. Supp. 2d 816, 819, 826 (N.D. Tex. 2006) (administrator properly considered video surveillance [of plaintiff diagnosed with psoriasis arthritis], which "showed a mobile person capable of performing in a sedentary occupation," and therefore "contradicted the opinions of both [plaintiff] and her physician regarding her func-tionality").   On the other hand, courts at times have found videos

indicate that Plaintiff was observed driving his pickup truck[103] and walking short distances three times over the course of three days, once while carrying a small bag.[104]   This limited observation over a very short period of time does not by itself support a conclusion either way as to Plaintiff's capabilities.   Furthermore, Dr. Bachman characterizes Plaintiff's self-reported activities as including "driving, bowling, fishing, [and] vacuuming the house,"[105] without any apparent recognition of the limited context in which Plaintiff reported the activities.   For example, Plaintiff reported engaging in household chores, including vacuuming, only one to two hours per month[106]; and, according to Plaintiff, he had not bowled in ten years.[107]

---

inadequate to support a determination that one is able to perform with reasonable continuity the material duties of one's occupation. *See, e.g.*, <u>Morgan v. UNUM Life Ins. Co. of Am.</u>, 346 F.3d 1173, 1178 (9th Cir. 2003) (video of plaintiff diagnosed with fibromyalgia and insomnia driving his car, eating lunch at a restaurant, carrying light objects, sitting and reading, and stretching and doing light aerobic exercise at the gym for 45 minutes, held not to be substantial evidence to support discontinuation of plaintiff's disability benefits).

[103] Document No. 45, ex. L at PRU/PAT 1035-37.

[104] <u>Id.</u>   Plaintiff was observed (1) walking from his truck to his home on Friday, Dec. 9, 2005; (2) walking from his truck to and from a restaurant the following Sunday; and (3) walking from his truck to and from an electronics store the same day.

[105] <u>Id.</u>, ex. A-2 at PRU/PAT 1157.

[106] <u>Id.</u>, ex. L at PRU/PAT 997.

[107] <u>Id.</u>, ex. M at PRU/PAT 1173.

However, Dr. Bachman also reviewed Plaintiff's medical history, including all reports from his various treating doctors and surgeons.  While the surveillance and self-reported activities alone might not justify her conclusion, they do tend to *support* it when considered with her analysis of Plaintiff's medical reports. *See* Braddock v. Baker Hughes Inc. Long Term Disability Plan, 461 F. Supp. 2d 490, 502 (S.D. Miss. 2006) (plan administrator was not unreasonable in concluding that video evidence showed that Plaintiff did not demonstrate physical limitations that would prevent him from performing sedentary occupation, "especially when viewed in light of the other evidence in the record").  For example, Dr. Bachman noted Dr. Esses's post-surgical evaluations that Plaintiff had done "extremely well," that he had "full motor strength in his upper extremities," and that his "X-rays show excellent position."[108]  Dr. Bachman's assessment is also confirmed by three different doctors--Drs. Denver, Lazoff, and Hood--none of whom appeared to emphasize either the surveillance or Plaintiff's self-reported activities.

Both Drs. Denver and Lazoff in subsequent independent reviews of the entire administrative record, including Plaintiff's arguments on each respective appeal, concluded that Plaintiff was subject to substantially the same restrictions.  While both included the surveillance and self-reported activities in their

---

[108] Id., ex. A-2 at PRU/PAT 1157.

reviews, they also explicitly relied upon medical documentation in reaching their conclusions.  For example, Dr. Denver indicated that Plaintiff's "subjective complaints and degree of self-reported chronic pain do not correlate with the past operative, diagnostic testing, and clinical findings," particularly in light of the "relatively normal neuromuscular and musculoskeletal exams noted by Dr. Stephen Esses," and Dr. Hood's independent medical exam.[109] Dr. Denver also found "no evidence of any adverse side effects due to medications" in the "extensive data set provided."[110]  Dr. Denver also specifically addressed a follow-up MRI and examination by Dr. Esses, determining that neither altered his original conclusions.[111]   Dr. Lazoff similarly relied upon Plaintiff's medical examination reports in finding, for example, that his self-reported levels of pain were out of proportion to documentation of his physical examinations.[112]  Regarding adverse side effects due to Plaintiff's pain medication, Dr. Lazoff also noted the lack of supporting evidence on the record when specifically addressing

---

[109] Document No. 45, ex. A-2 at PRU/PAT 1236.

[110] Id.

[111] Id., ex. A-2 at PRU/PAT 1284.

[112] Id., ex. A-2 at PRU/PAT 1338.

Dr. Perez's assertion that Plaintiff's pain medications would impair his abilities to focus and think clearly.[113]

Moreover, Dr. Hood, an orthopedic surgeon, personally examined Plaintiff and reviewed his medical history in December 2005, though Plaintiff refused to undergo a functional capacity evaluation.[114]   Dr. Hood nonetheless reached conclusions about Plaintiff's limitations similar to the later conclusions of Drs. Bachman, Denver, and Lazoff, without having before him the video surveillance and self-reported activities Prudential obtained for its reviews.[115]

Though Plaintiff's treating physicians, Drs. Esses and Perez, disagreed with the conclusions of Drs. Hood, Bachman, Denver, and Lazoff, Prudential was entitled to rely upon the conclusions of the latter four doctors.[116]   Nothing in ERISA "suggests that plan

---

[113] Id., ex. A-2 at PRU/PAT 1316, 1338.  In fact, Dr. Perez's visit summaries frequently indicated throughout 2005: "Medications improve daily life activities with no side effects." See, e.g., id., ex. J at PRU/PAT 871, 875, 879; id., ex. K at PRU/PAT 887.

[114] Id. ex. L at PRU/PAT 1020-23.

[115] See id., ex. L at PRU/PAT 1022-23.

[116] In fact, the restrictions suggested by Dr. Esses in February 2007 appear less strict than those indicated by Drs. Denver, Bachman, and Lazoff.  See Id., ex. A-2 at PRU/PAT 1320.   Dr. Esses's restrictions included only "no repetitive bending, stooping, or twisting," and a "lifting restriction of 25 pounds."  Id.  Nonetheless, Dr. Esses also opined that Plaintiff could return only to part-time work as of December 2006.  Id.  On the other hand, Dr. Esses on May 9, 2006 indicated only that Plaintiff would be "unable to work from May 25, 2006 through August 23, 2006."  Id., ex. M at PRU/PAT 1169.

administrators must accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 123 S. Ct. 1965, 1970 (2003). Moreover, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Id. at 1972. Still, "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id. Here, Prudential and its reviewing physicians did, indeed, consider Plaintiff's treating physicians' diagnoses and opinions; Prudential simply "was not required to give those opinions determinative weight." Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 233 (5th Cir. 2004).[117] That none of the reviewing doctors except Dr. Hood personally examined Plaintiff does not alter this conclusion. See, e.g., Braddock, 461 F. Supp. 2d at 502 (collecting cases and noting that "numerous courts have upheld administrator's decisions where the administrator chose to rely upon medical opinions from

---

[117] See also Dubose v. Prudential Ins. Co. of Am., 85 Fed. App'x 371, 372 (5th Cir. Dec. 24, 2003) (unpublished opinion) (independent medical examiner's evaluation of patient's medical record was "substantial evidence" supporting Prudential's rejection of disability claim notwithstanding finding of treating physician that patient was totally disabled); Horton v. Prudential Ins. Co. of Am., 51 Fed. App'x 928, at *3 (5th Cir. Oct. 8, 2002) (unpublished opinion) (reversing district court judgment that administrator abused its discretion in factual determination of disability based upon treating physician's opinion that plaintiff was disabled, where at least two other board-certified physicians' opinions indicated plaintiff could engage in meaningful, though light-duty capacity, employment).

doctors other than treating physicians . . . even where those doctors did not personally examine the claimant").

Finally, although there is evidence in the administrative record that Plaintiff may be considered "totally disabled" under the Social Security Act,[118] "the disability determinations of federal agencies are obviously not binding on [Prudential]." Guillot v. C.F. Indus., Inc., No. 06-3987, 2009 WL 152543, at *6 n.3 (E.D. La. Jan. 21, 2009); see also Horton, 51 Fed. App'x 928, at *3 ("[W]hile an ERISA plan administrator might find a social security disability determination relevant or persuasive . . . the plan administrator is not bound by the social security determination." (citing Moller v. El Campo Aluminum Co., 97 F.3d 85, 87 (5th Cir. 1996))).  Based on a careful review of the entire administrative record, there is substantial evidence to support Prudential's findings; thus, Prudential did not abuse its discretion.

IV.  Order

Based on the foregoing, it is

ORDERED that Defendants The Prudential Insurance Company of American and AON Employee Benefit Committee's Motion for Summary Judgment (Document No. 44) is GRANTED.  It is further

---

[118] See, e.g., Document No. 45, ex. A-1 at PRU/PAT 688; id., ex. I at PRU/PAT 703; id., ex. O at PRU/PAT 1384.

39

ORDERED that Defendants' Motion for Non-Jury Trial (Document No. 43) is DENIED AS MOOT.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 13ᵀᴴ day of January, 2010.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE